JB/2019R00836



RECEIVED
SEP 08 2021
AT 8:30 4:12 PM
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | Crim. No. 21-681 (RBK) |
|---|---|
| v. | 18 U.S.C. § 1349 |
|  | 18 U.S.C. § 1341 |
| CHRISTOPHER GUALTIERI | 18 U.S.C. § 1001(a)(2) |
|  | 21 U.S.C. § 843(a)(3) |
|  | INDICTMENT |

The Grand Jury in and for the District of New Jersey, sitting at Camden, charges:

## COUNT ONE
### (Conspiracy to Commit Health Care Fraud and Mail Fraud)

1. At all times relevant to this Indictment:

   a. Defendant CHRISTOPHER GUALTIERI resided in Franklinville, New Jersey, with Family Member 1 and their two minor children. Defendant GUALTIERI worked in telecommunications and had no training or experience in medicine or healthcare.

   b. Defendant CHRISTOPHER GUALTIERI was a long-time patient of Doctor 1. Family Member 1 worked periodically in one of Doctor 1's medical offices.

   c. Defendant CHRISTOPHER GUALTIERI was employed by Company 1, which had a wholly self-funded health insurance plan for qualified employees, retirees, and eligible dependents ("Company 1's Plan"). Company 1's Plan provided, among other benefits, coverage for prescription drugs.

1

Company 1's Plan was a "health care benefit program" as that term is defined by 18 U.S.C. § 24(b). Defendant GUALTIERI, Family Member 1, and their minor children were covered by Company 1's Plan.

      d.    Co-conspirator 1 was an employee of Company 1 who lived in Williamstown, New Jersey. Co-conspirator 1, Co-conspirator 1's spouse, and their minor child were covered by Company 1's Plan.

      e.    Co-conspirator 2 was an employee of Company 1 who lived in Shamong, New Jersey. Co-conspirator 2, Co-conspirator 2's spouse, and their adult child were covered by Company 2's Plan.

      f.    Family Member 2 and Family Member 3 were married to each other, lived in Winfield Park, New Jersey, and were relatives of defendant CHRISTOPHER GUALTIERI. Family Members 2 and 3 were both employed by Company 1 and covered by Company 1's Plan.

      g.    In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication tailored to the medical needs of an individual patient. Compounded drugs could be appropriately prescribed by a physician when a Food and Drug Administration ("FDA") approved medication did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the ingredient that triggers the allergic reaction.

h.   Compounding Pharmacy 1 was a pharmacy located in California that prepared compounded medications. Compounding Pharmacy 2 was a pharmacy located in Marlton, New Jersey, that prepared compounded medications. They are referred to herein collectively as the "Compounding Pharmacies."

i.   Pharmacy Benefits Administrator provided pharmacy benefit management services for Company 1's Plan's beneficiaries and other insurance plan beneficiaries pursuant to contracts with the insurance plans. Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. Pharmacy Benefits Administrator then billed the insurance plans based on the amount paid to the pharmacies for the claims. Pharmacy Benefits Administrator was a "health care benefit program" as that term is defined by 18 U.S.C. § 24(b).

j.   When the Compounding Pharmacies received a prescription for a compounded medication for an individual with prescription drug coverage administered by Pharmacy Benefits Administrator, the Compounding Pharmacies would verify coverage with Pharmacy Benefits Administrator, fill the prescription by mailing the compounded medication to the individual, bill Pharmacy Benefits Administrator for the prescription, and receive payment from Pharmacy Benefits Administrator.

k.   Sales Representative 1 received commission payments from the Compounding Pharmacies, either directly or through intermediaries.

2. From in or about January 2015 through in or about March 2021, in Gloucester County, in the District of New Jersey, and elsewhere, defendant

CHRISTOPHER GUALTIERI

did knowingly and intentionally conspire and agree with Co-conspirator 1, Co-conspirator 2, and others to commit certain offenses, namely:

    a. To knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347; and

    b. To devise a scheme and artifice to defraud, and to obtain money and property by means of materially false pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to knowingly cause to be delivered by mail and private and commercial interstate carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter and thing, contrary to Title 18, United States Code, Section 1341.

## Object of the Conspiracy

3.  It was the object of the conspiracy for defendant CHRISTOPHER GUALTIERI and others to unlawfully enrich themselves by causing the submission of false and fraudulent insurance claims for prescription medications to Pharmacy Benefits Administrator, which enabled defendant GUALTIERI and others to receive a portion of the money that Pharmacy Benefits Administrator paid to the Compounding Pharmacies for the prescription medications.

## Manner and Means of the Conspiracy

4.  It was part of the conspiracy that defendant CHRISTOPHER GUALTIERI and others learned that Pharmacy Benefits Administrator would reimburse, for those covered by Company 1's Plan, up to thousands of dollars for one individual's one-month supply of certain compounded prescription medications, including vitamins, scar creams, pain creams, and sunscreens.

5.  It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI recruited and attempted to recruit Co-conspirator 1, Co-conspirator 2, and others covered by Company 1's Plan to agree to receive prescription medications from the Compounding Pharmacies that were not medically necessary.

6.  It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI, Co-conspirator 1, Co-conspirator 2, and others utilized the means of identification and insurance information of others covered by Company 1's Plan who were unaware that they would receive prescription medications from the Compounding Pharmacies.

7. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI and others caused fraudulent prescriptions to be submitted from Doctor 1's office to the Compounding Pharmacies.

8. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI, Co-conspirator 1, Co-conspirator 2, and others received and accepted prescription medications that were not medically necessary that were mailed to them, as well as their spouses and dependents, by the Compounding Pharmacies.

9. It was further part of the conspiracy that, for the prescriptions he and his co-conspirators arranged, defendant CHRISTOPHER GUALTIERI would receive, through Sales Representative 1 and other intermediaries, a portion of the amount that the Compounding Pharmacies received for the medications from Pharmacy Benefits Administrator.

10. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI demanded that Sales Representative 1 and other intermediaries pay him exclusively in cash.

11. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI, in turn, offered Co-conspirator 1, Co-conspirator 2, and others cash payments and other remuneration in exchange for agreeing to receive the prescription medications that were not medically necessary for themselves, their spouses, and their dependents.

12. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI and others attempted to find and did find additional compounding pharmacies to replace the Compounding Pharmacies

when the Compounding Pharmacies stopped filling the fraudulent prescriptions.

13. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI and others caused Pharmacy Benefits Administrator to pay various compounding pharmacies at least the following approximate amounts for the following individuals between approximately December 2014 and June 2016:

| PATIENT(S) | APPROXIMATE AMOUNT |
| --- | --- |
| CHRISTOPHER GUALTIERI | $700,000 |
| CHRISTOPHER GUALTIERI's minor children and Family Member 1 | $1,100,000 |
| Co-Conspirator 1, spouse, and child | $875,000 |
| Co-Conspirator 2, spouse, and child | $485,000 |
| Family Members 2 and 3 | $960,000 |

14. It was further part of the conspiracy that defendant CHRISTOPHER GUALTIERI falsely told law enforcement and directed others to falsely tell law enforcement that he and other conspirators received no cash remuneration for their roles in arranging the prescriptions for compounded medications.

In violation of Title 18, United States Code, Section 1349.

## COUNTS TWO AND THREE
(Mail Fraud)

15. Paragraphs 1 and 3 through 14 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

16. On or about the dates listed below, in Gloucester County, in the District of New Jersey, and elsewhere, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, defendant

CHRISTOPHER GUALTIERI

for the purpose of executing such scheme and artifice, did knowingly and with fraudulent intent transmit and cause to be delivered by mail and private and commercial interstate carrier according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, the following:

| COUNT | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|
| 2 | March 14, 2016 | Compounded medication mailed from Compounding Pharmacy 2 in Marlton, New Jersey, to Co-conspirator 1 in Williamstown, New Jersey |
| 3 | March 16, 2016 | Compounded medication mailed from Compounding Pharmacy 2 in Marlton, New Jersey, to Co-conspirator 1's spouse in Williamstown, New Jersey |

In violation of Title 18, United States Code, Sections 1341 and 2.

8

## COUNT FOUR
## (False Statements)

17. Paragraphs 1 and 3 through 14 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

18. On March 29, 2021, defendant CHRISTOPHER GUALTIERI voluntarily participated in a non-custodial interview in Cherry Hill, New Jersey, with special agents from the Federal Bureau of Investigation ("FBI").

19. During the interview, defendant CHRISTOPHER GUALTIERI falsely stated, in sum and substance, that:

(a) he did not recruit others for the purpose of receiving compounded medications; and

(b) he did not pay others for their agreement to receive compounded medications.

20. Defendant GUALTIERI knew these statements were false because he recruited others for the purpose of receiving compounded medications and paid cash to, among others, Co-Conspirator 1 and Co-Conspirator 2 for their participation in his scheme.

21. On or about March 29, 2021, in Camden County, in the District of New Jersey, and elsewhere, defendant

CHRISTOPHER GUALTIERI

knowingly and willfully did make materially false, fictitious, and fraudulent statements and representations, as set forth in paragraph 19 of this Indictment, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely a criminal investigation conducted by

the United States Department of Justice and the Federal Bureau of Investigation.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT FIVE
(Acquiring Oxycodone Through Misrepresentation, Fraud, and Forgery)

22. Paragraphs 1(a) and 1(b) of this Indictment are hereby realleged and incorporated as though set forth in full herein.

23. Between in or about June 2015 and on or about March 27, 2019, in Gloucester County, in the District of New Jersey, and elsewhere, defendant

CHRISTOPHER GUALTIERI

did knowingly and intentionally acquire and obtain possession of oxycodone, a Schedule II controlled substance, by misrepresentation, fraud, forgery, deception, and subterfuge by preparing, filling, and causing to be filled handwritten prescriptions for oxycodone that were purportedly authorized by Doctor 1 for defendant GUALTIERI and Family Member 1.

In violation of Title 21, United States Code, Section 843(a)(3) and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION AS TO COUNTS ONE THROUH THREE

1. Upon conviction of the offenses alleged in Counts One through Three of this Indictment, the defendant, CHRISTOPHER GUALTIERI, shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offenses alleged in Counts One through Three of this Indictment, and all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNT FIVE

2. Upon conviction of the offense charged in Count Five of this Indictment, the defendant, CHRISTOPHER GUALTIERI, shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of the offense; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense.

### Substitute Assets Provision
(Applicable to All Forfeiture Allegations)

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third person;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

A TRUE BILL

_____
FOREPERSON



_____
RACHAEL A. HONIG
Acting United States Attorney

CASE NUMBER: 21-681

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

CHRISTOPHER GUALTIERI

INDICTMENT FOR

18 U.S.C. § 1349
18 U.S.C. § 1341
18 U.S.C. § 1001(a)(2)
21 U.S.C. § 843(a)(3)

RACHAEL A. HONIG
ACTING U.S. ATTORNEY, NEWARK, NEW JERSEY

JEFFREY B. BENDER
ASSISTANT U.S. ATTORNEY
CAMDEN, NEW JERSEY
(856) 757-5121

USA-48AD8
(Ed. 1/97)